IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-03021-RBJ

REGINA FARMER,

    Plaintiff,

v.

AMREST d/b/a Applebee's, a Delaware corporation,

    Defendant.

## ORDER

This case comes before the Court on defendant's motion for summary judgment. The complaint, filed by Ms. Farmer, alleges race discrimination in violation of 42 U.S.C. § 1981.

**Facts**

The plaintiff, Regina Farmer, is an African-American woman who was employed by defendant, AmRest, LLC ("AmRest"). AmRest is a franchisee of Applebee's restaurants. Ms. Farmer was an assistant manager at AmRest's Garden of the Gods Applebee's location, and her area of responsibility was over the bar and facilities of the restaurant. Ms. Farmer's employment was terminated in June 2011, and she alleges that the termination was a result of race discrimination.

Ms. Farmer was hired as an hourly employee in 1995 and was promoted to assistant manager in September 2010. The decision to promote Ms. Farmer was made by Susan Belluscio, an area coach. Ms. Belluscio was transferred to another position in March of 2011,

and Sean O'Loughlin became the interim area coach for the remainder of Ms. Farmer's employment.

On May 20, 2011 Ms. Farmer received a document from general manager Kevin Egloff. The nature of this document is disputed. Defendants characterize the document as an action plan that was given to Ms. Farmer as a result of deficiencies in her performance and to counsel her so that she could improve. (Egloff Dec. ¶ 2.) Ms. Farmer understood the document as a clarification of her duties that was given to all assistant managers and did not require corrective action. (Farmer Dep. at 122:17-124:21, April 13, 2012.)

AmRest conducts internal audits of its restaurants known as Applebee's Operation Assessments ("AOAs"). The AOAs are broken down into many categories. Some of the categories are outside of the manager on duty's control because they refer to the facility itself. On June 9, 2011 Jason Greenway, an area coach from a different area, completed an AOA of the Garden of the Gods restaurant while Ms. Farmer was the manager on duty. The nature of this evaluation is disputed. Four AmRest Applebee's were remodeled in or around May 2011, and AmRest explains that each of these restaurants received an AOA by a neutral area coach both before and after the remodel. (Farmer Dep. 126:23-129:10; Khlem Dep. 29:11-14, July 24, 2012.) However, Ms. Farmer argues that the AOA that evaluated her was the only one conducted on the four revitalized stores. (*See* Klehm Dep. at 30:6-16.) Another area of dispute is whether this was a neutral evaluation by an out of area coach. Defendants argue that Mr. Greenway completed a neutral evaluation, but Ms. Farmer argues that this is not the case. Ms. Farmer argues that the AOA was not neutral, because Mr. Greenway spoke to Mr. O'Loughlin, the area coach, seven times the day of the audit, including a 21 minute call during the audit. (Phone Records, Pl. Ex. T.)

At the time of the audit, Ms. Farmer was the only manager on duty. She received a failing grade for "management effectiveness." Mr. Greenway reported that Ms. Farmer's performance was deficient, because she was not engaging customers when visiting their tables and was not "driving her staff." (Greenway Dep. at 73:14-17; Greenway Dec. ¶ 10 Ex. 2.) However, Ms. Farmer disputes that this accurate. She argues that she visited all of the guest tables as she was supposed to do, handing out Father's Day coupons. (Farmer Dep. 259:18-260:7.) Further, Ms. Farmer argues that Mr. Greenway was not in the store long enough to accurately assess her performance, because he was outside in his truck the majority of the time, including a twenty-one minute call to Mr. O'Loughlin. (Farmer Dep. 255:7-260:25.)

In addition to the AOA, AmRest also argues that Ms. Farmer was the subject of a guest complaint. On June 13, 2011 a customer called to complain about the service she received at the Garden of the God Applebee's and the response of the manager on duty. (Rothman Dec. ¶ 2, Ex. A.) Mr. O'Loughlin called the customer to investigate the complaint. At that time, the customer said the manager on duty was an African American female. Based on the time of the customer complaint and the manager's schedules, Mr. O'Loughlin initially thought the complaint was about a different assistant manager. However, because Ms. Farmer is the only African-American assistant manager, he determined that the offending manager was Ms. Farmer. (O'Loughlin Dec. ¶¶ 8-9.) Ms. Farmer disputes that the complaint was about her, because she was not scheduled to work at the time of the complained of service. (Farmer Dep. 252:16-253:4.) Ms. Farmer also disputes whether Mr. O'Loughlin investigated the complaint, because he did not interview anyone in the store about the complaint and did not let Ms. Farmer see the complaint. (Farmer Dep. 159:21-23, 251:24-252:8; *see* O'Loughlin Dec. ¶¶ 8-11.)

On June 17, 2011 Mr. O'Loughlin met with Ms. Farmer at the Garden of the Gods Applebee's and issued her a written counseling based upon the failing score on the AOA and the customer complaint. (Farmer Dep. 158:24-160:25.) At the meeting Ms. Farmer said that she disagreed with Mr. Greenway's assessment during the AOA and disputed whether the guest complaint was directed at her. (*Id.*)

On June 22, 2011 Mr. O'Loughlin visited the Garden of the Gods Applebee's while Ms. Farmer was conducting a bartender meeting. After observing the meeting, Mr. O'Loughlin told Ms. Farmer that her levels of energy and engagement were not appropriate. (Farmer Dep. 183:9-18.) Ms. Farmer disagreed, explaining that she was discussing the serious issue of alcohol safety at the meeting. (*Id.*)

After this, Mr. O'Loughlin made the decision to terminate Ms. Farmer. Mr. O'Loughlin says his decision was because of Ms. Farmer's continuous refusal to accept feedback, and that she was unwilling to change and take responsibility for her actions. Ms. Farmer alleges that she was terminated because of racial bias.

**Standard**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56 (c)). When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.* The Court does not weigh the evidence or make credibility determinations. *Id.* The moving party has the burden to show that there is an absence of

evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**Conclusions**

A claim of employment discrimination can be proven using either direct or indirect evidence. *Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1225 (10th Cir. 2000). In this case, Ms. Farmer does not offer direct evidence of discrimination. Rather, she seeks to establish her case using circumstantial evidence. Under the burden shifting framework established in *McDonnell Douglas,* Ms. Farmer must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). If Ms. Farmer can establish a prima facie case, the burden then shifts to AmRest to articulate a legitimate non-discriminatory reason for Ms. Farmer's termination. *Id.* If AmRest can proffer a legitimate non-discriminatory reason, the burden then shifts back to Ms. Farmer to show that AmRest's reasons were pretext for unlawful discrimination. *Id.*

To establish a prima facie case, Ms. Farmer must show that "(1) [s]he belongs to a protected class; (2) [s]he was qualified for [her] job; (3) despite [her] qualifications, [s]he was discharged; and (4) the job was not eliminated after such discharge." *Rivera v. City and Cnty. of Denver,* 365 F.3d 912, 920 (10th Cir. 2004).[1] The first prong of Ms. Farmer's prima facie case is

---

[1] Citing *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 531 (10th Cir. 1998), defendant offers a different test to establish a prima facie case of discrimination: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others outside her protected class. While not expressly overruled, this test has been modified. *See Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160, 1165 n.3 (10th Cir. 2000); *Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1226-20 (10th Cir. 2000). Accordingly, this Court applies the more recent test to establish a prima facie case articulated by the Tenth Circuit.

met because as an African-American woman, Ms. Farmer is a member of a protected class. AmRest argues that Ms. Farmer did not meet the second prong because she cannot show that she was qualified for her job. "[A] plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time." *Toth v. Gates Rubber Co.,* 216 F.3d 1088, *6 (10th Cir. 2006) (quoting *MacDonald v. E. Wyo. Mental Health Ctr.,* 941 F.2d 1115, 1121 (10th Cir. 1991)). AmRest argues that because Ms. Farmer was put on an "action plan" in May, received a failing score in management effectiveness on her AOA, and was the subject of a customer complaint, she was not qualified for her job. However, in her deposition, Ms. Farmer offered that the action plan was not in response to poor job performance, that the AOA was not a fair assessment of her management effectiveness, and the customer complaint did not refer to her. Ms. Farmer also offers that she previously received a satisfactory grade on an AOA. Because Ms. Farmer explains that she was qualified for the job, she has established the second prong of her prima facie case. Ms. Farmer established the third and fourth prongs because she was discharged from her job and the position was not eliminated after her termination.

Ms. Farmer has established a prima facie case for discrimination, and therefore, the burden shifts to AmRest to offer a legitimate, non-discriminatory reason for terminating Ms. Farmer. AmRest offers that it terminated Ms. Farmer because she was placed on an action plan, received a failing grade for management effectiveness on her AOA, a guest complained about her management, and she did not have appropriate energy in a bartender meeting. Further, in its motion for summary judgment, AmRest argues that Ms. Farmer's refusal to accept feedback and

refusal to change ultimately led to her termination. Because these reasons are not facially discriminatory, they satisfy AmRest's burden to produce a legitimate non-discriminatory reason for terminating Ms. Farmer. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003). Accordingly, the burden shifts back to Ms. Farmer to show that these reasons are pretext for unlawful discrimination.

A plaintiff shows pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti*, *Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997). Pretext can be shown in a variety of ways, and there is no strict form which a plaintiff must follow. *Kendrick,* 220 F.3d at 1230. Plaintiffs typically show pretext in one of three ways: "(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Id.* (internal citations omitted).

AmRest offers as a legitimate non-discriminatory reason for termination, the culmination of several events. Therefore, the Court examines the following events in its pretext analysis: (1) the action plan from May 20, 2011; (2) the AOA from June 9, 2011; (3) the customer complaint that was reported on June 13, 2011; and (4) the bartender meeting on June 22, 2011.

First, AmRest offers that Ms. Farmer was given an action plan by Mr. Egloff, her general manager, that outlined that she was underperforming in certain areas and required improvement. However, Ms. Farmer understood the May 20, 2011 document very differently. Ms. Farmer

explains that the document was given to all of the managers and was not a disciplinary action, but rather a document to clarify responsibilities and allow for improvement. (Farmer Dep. 121:17-123:22.) The text of the document is ambiguous; it discusses areas for improvement but does not specifically say that there were previous problems. (Pl. Ex. O.) The document concludes: "This document was written to ensure that areas for opportunity are understood." (*Id.*)

Second, the AOA Mr. Greenway conducted where he evaluated Ms. Farmer's "management effectiveness" needs to be considered. Ms. Farmer argues that this evaluation is without merit because Mr. Greenway was not there long enough to perform an AOA, and the majority of the time he was there he was on the phone. Further, Ms. Farmer argues that Mr. Greenway was not the neutral observer that he was supposed to be because he was on the phone with Mr. O'Loughlin during the AOA and was friends with Mr. O'Loughlin. (Farmer Dep. 255:7-260:25.)

There are some peculiarities with this AOA that diverge from AmRest's usual practice. First is the issue of why Mr. Greenway performed the AOA. Mr. Khlem, the district manager, said that the reason Mr. Greenway was conducting the AOA was because all of the Colorado Springs locations that had been remodeled were being evaluated by a neutral area coach before and after the renovation. (Khlem Dep. 29:11-30:16.) However, AmRest was asked to produce all AOAs from around that time, and Ms. Farmer did not receive any AOAs from the other Colorado Springs locations conducted by a neutral manager. Next, Mr. Khlem testified that the minimum amount of time it would take to complete an AOA was three to three and a half hours. (Khlem Dep. 69:8-16.) Ron Cushing who had completed AOAs on the store in the past spent close to six hours on an AOA. (Farmer Dep. 261:14-22.) Ms. Farmer testified that Mr.

Greenway was in the Applebee's very briefly, and of that time, he spent much of it outside in his truck or on the phone. (Farmer Dep. 260:21-23.) It is significant that Mr. Greenway spent significantly less time on his AOA than what other evaluators would consider appropriate, because it calls into question the thoroughness of his evaluation. Further, evidence that a defendant acts contrary to an unwritten policy or employment practice can be evidence of pretext. *Kendrick,* 220 F.3d at 1230.

Also of note during the AOA is how Ms. Farmer lost points. She did not receive points for "touching" tables, a practice of going to tables and engaging with the patrons. (Farmer Dep. 255:25-256:25.) However, why Ms. Farmer did not earn those points is in dispute. Mr. Greenway explains that Ms. Farmer was not awarded points because when she approached tables she did not adequately engage the guests. (Greenway Dec. ¶ 14.) However, Ms. Farmer claims that she was told she did not get the points because Mr. Greenway did not see her approach tables. (Farmer Dep. 258:25-259:1.)

Further, this was not the first time Ms. Farmer was evaluated during an AOA. Ms. Farmer was also one of two managers on duty when Ron Cushing performed an AOA on the store in early 2011. (Farmer Dep. 261:5-12.) During that evaluation Ms. Farmer did not get a failing score on manager effectiveness, and she believes that she managed in the same way during both AOAs. (Farmer Dep. 261:6-12.) Finally, Mr. O'Loughlin testified that to his knowledge no other manager was terminated or given written documentation as a result of a failing score on an AOA while he was there. (O'Loughlin Dep. 63:8-9.) This all suggests that the AOA that AmRest relied on in terminating Ms. Farmer deviated from AmRest's normal practices for an AOA.

Next, the customer complaint must be considered. Mr. O'Loughlin determined that Ms. Farmer was the complained of manager, but there are some inconsistencies with this complaint and the way Mr. O'Loughlin responded to it. One inconsistency is that the customer who filed the complaint said it occurred at a time when Ms. Farmer was not scheduled to be working, yet Mr. O'Loughlin still determined Ms. Farmer was responsible. (O'Loughlin Dec. ¶¶ 8-9.) Also, Ms. Farmer and Mr. Khlem both discussed that often it would be important to interview staff during a complaint investigation. (Khlem Dep. 25:21-24:4.) Mr. O'Loughlin did not. Further, Ms. Farmer testified that generally an employee would be able to see the complaint against her, but even after she requested to view the complaint, Mr. O'Loughlin did not make the complaint available to Ms. Farmer. (Farmer Dep. 251:24-252:8.) It appears that in investigating the complaint, Mr. O'Loughlin deviated from AmRest's standard practices.

Finally, Mr. O'Loughlin decided to terminate Ms. Farmer after observing her at a bartender meeting where he believed that she did not have appropriate energy. Mr. O'Loughlin testified that he decided to terminate Ms. Farmer because "she did not have presence. She did not have energy level. She did not have engagement of staff and guests." (O'Loughlin Dep. 54:22-24.) Mr. O'Loughlin and Ms. Farmer describe that meeting very differently. Mr. O'Loughlin complains that Ms. Farmer did not have appropriate energy when she was leading the meeting. (O'Loughlin Dec. ¶ 14.) However, Ms. Farmer explains that her energy was appropriately subdued because she was discussing alcohol safety and it was during business hours and she did not want to disturb the restaurant's patrons. (Farmer Dep. 183:9-18.) Ms. Farmer also notes that Mr. O'Loughlin was not at the meeting for very long, but rather walked past the meeting and into the office. (Farmer dep. 181:5-10.)

Looking at the events leading up to Ms. Farmer's termination, there is not one isolated event that clearly demonstrates pretext. However, when the totality of the circumstances is examined, a jury could determine that AmRest's reasons for firing Ms. Farmer were pretext for unlawful discrimination. Each action deviated from the company's unwritten policies and company practices. For example, only Ms. Farmer's location received an AOA by an area coach from another area, that AOA was significantly shorter than company practice, only Ms. Farmer received a formal write up for the failing AOA, and the customer complaint was not investigated in the usual way by interviewing staff and showing the complained of employee the complaint. Further, there are very different explanations of other events. It is unclear whether the May 20, 2011 document was a disciplinary action or just a routine memo that all managers received to clarify their duties. Despite this ambiguity, AmRest relies on it to allege a pattern of underperformance. At the bartender meeting that Mr. O'Loughlin observed, there are conflicting accounts about the subject matter of the meeting, and what level of energy was appropriate. While this Court does not "sit as a super-personnel department that second-guesses the [defendant's] business decisions . . . evidence indicating that an employer misjudged an employee's performance . . . is, of course, relevant to the question of whether [the employer's] stated reason [for its actions] is . . . masking prohibited discrimination." *Minshall v. McGraw Hill Broad. Co., Inc.*, 323 F.3d 1273, 1280 (10th Cir. 2003) (quoting *Tyler v. Re/Max Mountain States, Inc.,* 232 F.3d 808, 813-14 (10th Cir. 2000)). Ms. Farmer has presented evidence so that a reasonable jury could determine that her performance was not accurately judged. Accordingly, a jury could determine that AmRest's proffered reasons were pretext for unlawful discrimination.

AmRest explains that among its reasons for terminating Ms. Farmer was that she was unwilling to change in response to feedback. However, this argument assumes that the feedback

Ms. Farmer was receiving was legitimate. AmRest points out that Ms. Farmer disagreed with her AOA and would not take responsibility for the customer complaint. However, Ms. Farmer disputed the AOA, because she believed Mr. Greenway was not in the building long enough to observe her. Ms. Farmer did not take responsibility for the customer complaint because she did not believe she was the manager on duty at the time of the complaint. Again, a jury could determine that AmRest's reliance on Ms. Farmer's unwillingness to change was pretext. Because Ms. Farmer has demonstrated that there is a genuine issue of material fact as to the sincerity of the defendant's proffered reasons for terminating Ms. Farmer, summary judgment is not appropriate.

**Order**

Defendant's motion for summary judgment is DENIED.

DATED this 19th day of October, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge